PEOPLE ex rel. SMITH, Town Sup'r, v. MILLER, State Comptroller.

(Supreme Court, Appellate Division, Third Department. May 11, 1904.)

1. TAXATION—STATE PROPERTY—STATUTES—CONSTRUCTION.

Laws 1896, c. 389, p. 424, provides that certain land belonging to the state in the town of Smithtown shall be assessed and taxed at a like valuation and rate as similar land of individuals within said town, and in the same manner as other lands are assessed and taxed "for the purpose hereinafter provided." Section 2 enacts that payment of the equitable and just proportion of taxes imposed for the discharge of such debt as by this act provided, "contracted and incurred prior to the acquisition by the state of said lands," shall be made by the State Treasurer on the certificate of the Comptroller. Held, that such land was not to be assessed and taxed, according to the rate of assessment on other lands, for the purpose of paying all debts, but only for the purpose of paying those debts incurred by the town prior to the acquisition by the state of said land.

2. SAME—PRIOR PAYMENTS.

The fact that the state had paid a tax assessed for all debts from 1896 until 1902 could not change its obligation under the statute and make it liable to continue such payments.

**3. SAME.**

The statute was not altered by the fact that the county, when the owner of the land, paid taxes in full, such payments being under an entirely different statute.

**4. SAME.**

Where doubt exists as to the construction of a statute permitting taxation of state property, the doubt must be resolved in favor of the state.

Certiorari by the people, on the relation of Edward H. L. Smith, as supervisor of the town of Smithtown, against Nathan L. Miller, State Comptroller, to review his determination as to the amount of assessment of certain state lands in said town. Determination of the Comptroller modified and affirmed.

About 30 years ago the town of Smithtown was bonded to the amount of $50,000 for the purpose of raising money to assist in the construction of the Port Jefferson Branch of the Long Island Railroad. Those bonds bore interest at the rate of 7 per cent., and became due in 1901. By chapter 230, p. 289, of the Laws of 1884, the county of Kings was enabled to and did purchase a large tract of land in the town of Smithtown, and erected and maintained thereon extensive buildings for the care and treatment of the insane. It was by that act provided that the lands so purchased should be liable to taxation for all purposes, but that the buildings and improvements thereon should be exempt from any taxation whatever. By chapter 371, p. 715 of the Laws of 1891, this act was amended to provide that the land should be assessed at the amount paid therefor, and still provided that the buildings and improvements thereon should be exempt from taxation. In 1895 this entire property was conveyed to the state of New York, and as state property it could no longer be taxed. In 1896 (chapter 389, p. 424) the law in question was passed. Under this act this property was assessed at $87,500, and ever since its enactment the state has paid to the town the taxes upon that assessment at the same rate as paid by other lands within the town. For example, if the tax rate for any one year was 62 cents on every $100, the state would pay the sum of $542.50. This continued until the year 1892. In that year the assessment of land was, as before, the sum of $87,500. The tax rate for the year in the town, county, and state taxes was 62 cents on each $100, at which rate the tax would amount to $542.50. The State Comptroller, however, issued his certificate to the State Treasurer for only the sum of $20.70, alleging as a reason therefor as follows: "On investigation it was found that the bonded indebtedness of said town matured in 1901, and the town, not having a sufficient amount in its sinking fund to pay the bonds in full, issued new bonds of $18,000, the bonds being $500 each, and bearing 3½ per cent. interest, to be paid one in each year up to and including July 1, 1925, and two in each of the years 1926 to 1931, inclusive. To retire said bonds as they mature, there should be raised in each year, up to and including the year 1925, the sum of $517.50, and for each of the years 1926 to 1931, inclusive, the sum of $1,035; this department being of the opinion that, under section 2 of said chapter 389 [page 424] of the Laws of 1896, the state was liable only for its proportion of the tax levied to extinguish the bonded indebtedness of said town of Smithtown, and not, as the local authorities contend, for the proportion of the amount levied for state, town, and county taxes that the assessed value of said property bears to the total valuation of the town (which view is sustained in your opinion of June 23, 1903). The tax of 1902 was audited at, and a credit given of, $20.70, for the following reason:

" 'The aggregate valuation of the town of Smithtown for the year 1902, as reported to this office by the clerk of the board of supervisors of Suffolk county, is $2,212,687.93; the assessed valuation of the hospital property is $87,500, or about 4 per cent. The amount of tax that should have been levied to retire one bond was $517.50, of which amount the state should pay 4 per cent., or $20.70.' "

This determination is sought to be reviewed by this writ of certiorari.

Argued before PARKER, P. J., and SMITH, CHASE, CHES-TER, and HOUGHTON, JJ.

Ackerly & Miles, for relator.

John Cunneen, Atty. Gen. (William H. Wood, of counsel), for respondent.

SMITH, J.    The correctness of the Comptroller's determination rests upon the construction of chapter 389, p. 424, of the Laws of 1896. The second section of the act states unmistakably its purpose, to wit, the payment of the "equitable and just proportion of taxes imposed for the discharge of such debt as by this act provided, contracted and incurred prior to the acquisition by the state of lands occupied by the Long Island State Hospital." That payment is required to be made by allowing to the treasurer of Suffolk county a credit of such proportion of said taxes as may be required to pay such debt hereinbefore mentioned. In the year 1901 these bonds became due. If paid in that year, the obligation of the state under this statute would have ceased. There then remained unpaid about $18,000 of the $50,000 originally contracted. Instead of paying the said bonds when they became due, they were in fact extended, or renewal bonds given, running, the last of them, until 1931. If the relator's contention be upheld, the state will by that time have paid not only its just proportion of said debt, but will have practically paid the debt in full by the taxes contributed. This, we think, is clearly at war with the expressed intention of the statute. The contention of the relator, however, is based upon some expressions in the first section of the statute. It is there provided that this land "shall be assessed and taxed at a like valuation and rate as similar land of individuals within said town, and in the same manner as other lands are assessed and taxed for the purpose hereinafter provided." The Comptroller's determination in no way antagonizes this part of the statute. Assuming that the land in the town is assessed at the rate of 62 cents upon $100 for all purposes, it would only be assessed a small part of that sum for the purpose of paying this bonded indebtedness. According to the rate of assessment upon other land for the purpose of paying this bonded indebtedness, is this state land to be assessed. The relator's contention that it should be according to the rate of assessment on other land for the purpose of paying all debts is unwarranted by any of the provisions of the act. The fact that the state has thus paid a tax assessed from 1896 until 1902 cannot change its obligation under the statute, nor is the statute altered by the fact that the county, when the owner of this land, paid taxes in full, as that payment was made under an entirely different statute.

The plain wording of the statute, in our judgment, leaves no room for construction. If doubt exists, however, as to its meaning, that doubt must be resolved in favor of the state. See Black on Interpretation of Statutes, p. 119.

The relator further contends that, even upon the construction placed upon the act by the Attorney General, the Comptroller's determination was wrong. In 1901 there remained unpaid upon this indebtedness the sum of $18,000. Thirty-six $500 bonds were issued, which were payable one in each year up to and including July 1, 1925, and two in

each of the years 1926 to 1931, inclusive. These bonds were to bear 3½ per cent. interest. The Comptroller has estimated that to retire these bonds there should be raised in each year up to 1925 the sum of $517.50, and for each of the years 1925 and 1931 the sum of $1,000.35, treating the assessed valuation of this real estate as 4 per cent. of the assessed valuation of the town. He has found the sum of $20.70 as the sum which the Treasurer should credit the county of Suffolk for the year 1902. It will thus be seen that, while the Comptroller has allowed one year's interest upon each bond to be included with the principal of the bond to which the state should contribute its tax, he has omitted to include the interest upon the remaining bonds which was falling due each year and which must be paid by the town. This was probably an inadvertence on the part of the Comptroller. The interest upon $18,000 at 3½ per cent. for one year amounts to $630, so that at the end of the first year, in addition to the payment of one bond or $500, $630 would be required to be paid upon this indebtedness. The state's proportion of that sum is $44.66, which the Comptroller should have properly directed the Treasurer to credit to the county of Suffolk. The determination of the Comptroller should be thus modified, and, as modified, affirmed, without costs of this writ to either party.

Determination of Comptroller modified as stated in opinion, and, as modified, affirmed, without costs to either party. All concur.